# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| HASIME ISMANI, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-957 |
| Plaintiff. | **CLASS ACTION COMPLAINT** |
| v. | |
| AFNI, INC., | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Hasime Ismani is an individual who resides in the Eastern District of Wisconsin (Kenosha County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect was incurred as a result of a consumer transaction.

6. Defendant Afni, Inc ("Afni") is a debt collection agency with its principal place of business located at 404 Brock Drive, Bloomington, IL 61701.

7. Afni is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Afni is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

**FACTS**

9. On or about February 13, 2020, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt, purportedly owed to "LIME RESIDENTIAL LTD (Serviced by Affirm)." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

10. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred as a result of a close end loan for the purchase of personal, family, or household good.

11. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by Afni in connection with the collection alleged debts.

13. Upon information and belief, <u>Exhibit A</u> was the first written communication Plaintiff received from Defendant regarding the alleged debt referenced in <u>Exhibit A</u>.

14. <u>Exhibit A</u> includes the following representations which largely reflect the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

2

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. Additionally <u>Exhibit A</u> includes the following representations:



16. <u>Exhibit A</u> also states:

> Your LIME RESIDENTIAL LTD (Serviced by Affirm) account has been referred to Afni, Inc. for collection. Please take this opportunity to pay your account balance in full.

17. <u>Exhibit A</u> also states:

> ORIGINAL CREDITOR: Cross River Bank, 885 Teaneck Road, Teaneck, NJ 07666

18. Although <u>Exhibit A</u> lists the "Creditor" of Plaintiff's alleged debt as "LIME RESIDENTIAL LTD (Serviced by Affirm)" and an "ORIGINAL CREDITOR" as "Cross River Bank," Plaintiff is unfamiliar with any of these entities.

19. <u>Exhibit A</u> thus includes representations which are false, deceptive, misleading and confusing as to the identity of the creditor of Plaintiff's alleged debt as well as the character and legal status of such debt.

20. Cross River Bank ("Cross River") is a New Jersey State Chartered Commercial Bank. It originates small personal loans for finance companies such as Best Egg and Affirm.com. *See* https://www.bestegg.com/ ("Best Egg loans are unsecured personal loans made by Cross River Bank, a New Jersey State Chartered Commercial Bank, Member FDIC."); https://www.affirm.com/about ("Affirm loans are made by Cross River Bank, Member FDIC.").

21. Upon information and belief, Cross River's role is limited to that of a "pass-through" entity, and consumers never deal with Cross River directly.

22. Upon information and belief, almost immediately after origination by Cross River, Affirm sells the loan to a third-party "investor" but continues to service that loan on the third-party investor's behalf.

23. As a result, the representation that the "Creditor" of Plaintiff's alleged debt is "LIME RESIDENTIAL LTD (Serviced by Affirm)" and the "ORIGINAL CREDITOR" is "Cross River Bank" would be confusing and misleading to the unsophisticated consumer.

24. An unsophisticated consumer would not be able to determine whether Cross River and/or Affirm assigned ownership of the account to "LIME RESIDENTIAL LTD" shortly after origination or whether River and/or Affirm sold Plaintiff's alleged debt after it defaulted and the account charged off.

25. Whether a person has taken assignment of an account after the consumer's default is material information in determining whether that person is a "creditor" of the account as that term is used in the FDCPA. *See* 15 U.S.C. § 1692a(6)(F)(iii) (defining "debt collector" to exclude any person collecting "a debt which was not in default at the time it was obtained by such person."); *see also McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501 (7th Cir. 2008) (discussing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).

4

26. The Seventh Circuit recently held that a debt collector must *clearly* identify the current creditor of the debt:

> If the validation notice required under § 1692g(a)(2) does not identify the current creditor clearly and accurately, the law has been violated. A plaintiff need not offer additional evidence of confusion or materiality to prove the violation.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

27. "*Clear* identification of the current creditor serves the important purpose of helping unsophisticated consumers avoid fraud and the potential for double payments." *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *5-6 (S.D. Ind. Sept. 19, 2018) (citing *Janetos*, 825 F.3d at 319 and *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *4).

28. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018);

5

*Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

29. Additionally <u>Exhibit A</u> includes the following representations:

> **WHAT IS MY ACCOUNT INFORMATION?**
> Creditor: LIME RESIDENTIAL LTD
> (Serviced by Affirm)
> Creditor Account: ▮▮▮▮C6NY
> Afni, Inc. Account: ▮▮▮▮89-01
> Fees: $0.00
> Payments: $0.00
> BALANCE DUE: $2,876.76

30. <u>Exhibit A</u> thus threatens to impose "Fees" on Plaintiff's alleged debt. Although the amount of each is $0.00, the letter implies that there could be interest or other fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one."); *Duarte v. General Revenue Corp.*, No. 17-cv-2754, 2017 U.S. Dist. LEXIS 188441, at *7-8 (N.D. Ill. Nov. 15, 2017) ("With regard to costs, the balance statement says only that the 'current cost balance' is zero. The Court agrees with Duarte that this statement could plausibly imply that costs might accrue in the future, otherwise such a column would be unnecessary.").

31. As a district court in the Northern District of Illinois recently held:

> [B]y stating that fees and collection costs stood at "$0.00," instead of stating something like "N/A" or declining to mention fees and collection costs at all, the letter reasonably could be read to imply that such charges would begin to accrue if Wood did not pay the debt. Why, after all, would Allied include a column for fees and collection charges, and insert a dollar figure ($0.00), if not to suggest that such fees and costs might possibly accrue in the future?

*Wood v. Allied Interstate, LLC*, No. 17-cv-4921, 2018 U.S. Dist. LEXIS 98738, at *6 (N.D. Ill. June 13, 2018); *see also, Lemke v. Escallate, LLC*, No. 17-cv-5234, 2019 U.S. Dist. LEXIS 45152, at *7-9 (N.D. Ill. Mar. 19, 2019); *Duarte v. Client Servs.*, No. 18-c-1227, 2019 U.S. Dist. LEXIS 53900, at *5-9 (N.D. Ill. Mar. 29, 2019).

32. On the face of Exhibit A, it is impossible to determine the amount that Defendant is attempting to collect because the letter is confusing as to whether the balance of the account is increasing as a result of interest and non-interest fees.

33. The unsophisticated consumer would be confused and misled as to whether the references to "Fees" meant that the account was bearing collection fees, and thus may actually be greater than the balance stated in Exhibit A by the time the consumer actually received Exhibit A. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

34. Upon information and belief, Defendant does not actually add any such fees to consumer collection accounts. Defendant did not add any interest, charges, or fees between Exhibit A.

35. If the account is not actually subject to the assessment fees, the references to "Fees" confusingly and misleadingly imply to the unsophisticated consumer that it may incur such additional costs.

36. Exhibit A does not state the amount of the debt in a non-confusing manner. The unsophisticated consumer would be confused as to whether Defendant was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

37. The ambiguous zero amount itemizations could be interpreted in several different ways, only one of which may be correct:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one. On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *6-7 (E.D. Wis. Oct. 28, 2014).

38. In the absence of an affirmative statement that the account was (or was not) subject to fees, the ambiguous references to "Fees" could imply that such charges were accruing.

39. The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

40. The apparent contradiction and confusion inherent in itemizing zero amounts is gratuitous. Had Exhibit A simply stated that interest and fees were not accruing, they would not create such gratuitous and unnecessary confusion. *Duarte*, 2017 U.S. Dist. LEXIS 188441, at *7-9; *Wood*, 2018 U.S. Dist. LEXIS 98738, at *6.

41. The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be collecting accruing interest or fees when the balance is not actually increasing. *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

42. Furthermore, there is no explanation in the letter as to what the "Fees" are or would be assessed.

8

43. The unsophisticated consumer interprets references to "Fees" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

44. Defendant, however, could not add any collection fees to Plaintiff's account.

45. As an unsecured consumer loan, the alleged debt referenced by <u>Exhibit A</u> is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

46. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

47. Plaintiff obtained the personal loan for the purpose of using the money to buy household goods and services. Plaintiff is a "customer," pursuant to Wis. Stat. § 421.301(17).

48. The creditor, whoever it is, is a "merchant" because it routinely lends money to consumers like Plaintiff. Wis. Stat. § 421.301(25). Defendant is also a merchant because it claims to have taken assignment (at least for collection purposes) of that consumer loan, and is collecting on that loan on behalf of the original creditor or some assignee.

49. Plaintiff obtained money on credit from the original creditor. Wis. Stat. § 421.301(14).

50. Plaintiff's loan required Plaintiff to pay interest (i.e. a finance charge) to the original creditor or assignee, and the loan was payable in more than two installments. Wis. Stat. §§ 421.301(20)(a), 421.301(30).

51. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also, Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

52. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

53. Because personal loans, including Plaintiff's loan, are consumer credit transactions, the nebulous reference to "Fees" in Exhibit A falsely represents or implies that Defendant has a right to add collection fees to the debt.

54. Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit Defendant to add a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *see also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

55. Further, the alleged debt has been accelerated, and there are no late fees that could conceivably be added to Plaintiff's alleged debt. *E.g., Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-3656, 2018 U.S. Dist. LEXIS 54898, at *11 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points

10

out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated.") (citing *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003)).

56. Plaintiff was confused by Exhibit A.

57. The unsophisticated consumer would be confused by Exhibit A.

### *The FDCPA*

58. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found

11

that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

60. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly

protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.''' (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

61. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

13

62. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

63. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

64. 15 U.S.C. § 1692g states, in relevant part:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the creditor to whom the debt is owed;….

### *The WCA*

65. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

66. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

67. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

68. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and

sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

69. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

70. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

71. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

72. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

73. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

74. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

75. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Exhibit A represents that the "Creditor" of Plaintiff's alleged debt is "LIME RESIDENTIAL LTD (Serviced by Affirm)" and the "ORIGINAL CREDITOR" is "Cross River Bank," which is confusing and misleading to the unsophisticated consumer.

78. An unsophisticated consumer would not be able to determine whether Cross River and/or Affirm assigned ownership of the account to "LIME RESIDENTIAL LTD" shortly after origination or whether River and/or Affirm sold Plaintiff's alleged debt after it defaulted and the account charged off.

79. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692g(a), and 1692g(a)(2).

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. By itemizing "Fees," Exhibit A falsely threatens to assess such fees against Plaintiff's alleged debt and includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of such debt.

82. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692g(a)(1).

**COUNT II – WCA**

83. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. By itemizing "Fees," Exhibit A falsely threatens to take an action which Afni did not intend to take and to claim a right which is not permitted by law.

85. Defendant thereby violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

**CLASS ALLEGATIONS**

86. Plaintiff brings this action on behalf of two prospective classes.

87. Class I (the "Statewide Class") consists of (a) all natural persons in the state of Wisconsin, (b) to whom Afni mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) seeking to collect an alleged debt allegedly owed to "LIME RESIDENTIAL LTD (Serviced by Affirm)," (d) between June 25, 2019 and June 25, 2020, inclusive, and (e) not returned by the postal service.

88. Class II (the "Nationwide Class") consists of (a) all natural persons in the United States, (b) to whom Afni mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) seeking to collect an alleged debt allegedly owed to "LIME RESIDENTIAL LTD (Serviced by Affirm)," (d) between June 25, 2019 and June 25, 2020, inclusive, and (e) not returned by the postal service.

89. Each class is so numerous that joinder is impracticable.

90. Upon information and belief, there are more than 50 members of each class.

91. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

92. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

93. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

94. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

95. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 25, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue

Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com